**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 15-cv-00396-CMA-MJW

STEVEN C. LOGSDON,

    Plaintiff,

v.

BNSF RAILWAY COMPANY, and
ANDREW CALLAHAN,

    Defendants.

---

**ORDER GRANTING DEFENDANTS' MOTION TO TRANSFER**

---

This matter is before the Court on Defendants' Motion to Transfer. (Doc. # 13.) Defendants BNSF Railway Company (BNSF) and Andrew Callahan request that this case be transferred to the United States District Court for the District of Nebraska. For the reasons discussed below, the instant Motion is granted.

## I. BACKGROUND

Plaintiff Steven Logsdon, a citizen of Nebraska, brought this action pursuant to the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 *et seq.*, and the Federal Railroad Safety Act (FRSA), 49 U.S.C. § 20109 *et seq.* Plaintiff's Complaint alleges that in September or October of 2012, he sustained injuries to his upper body while working for BNSF in Alliance, Nebraska, after he was "required to manually remove a piece of

slip paper with coal on it from underneath a coal car by grabbing the slip paper with both hands and walking in a backward direction." (Doc. # 1, ¶ 11.) Plaintiff also alleges that when he reported this injury to BNSF Management employee Callahan, Callahan became upset because there had been three prior employee injuries and one death that had occurred at BNSF's facilities in Nebraska. (*Id.*, ¶ 25.) Plaintiff claims that he was intimidated by Callahan to change his story about the origin of his injury, such that it would not be reportable to the Federal Railroad Administration. (*Id.*, ¶ 26.) Specifically, in completing his BNSF Employee Personal Injury/Occupational Illness Report and handwritten statement, Callahan pressured Plaintiff to lie and state that his injury did not relate to a specific acute event and instead that his symptoms of pain had "accumulated" over a longer period of time. (*Id.*, ¶¶ 26-27.) Plaintiff reported his injury per Callahan's instructions, and after doing so, received medical care in Scottsbluff, Nebraska and continued working for BNSF. (*Id.* ¶ 29.)

However, in May of 2013, Plaintiff was asked to provide a recorded statement to BNSF Claims Representative Matthew Dimmitt about his injury report, at which point Plaintiff informed Dimmitt that, in fact, he sustained his upper-body injury as a result of the single incident described above, in 2012. (*Id.*, ¶ 30.) In July of 2013, Plaintiff was notified that he was required to attend a disciplinary investigation for being dishonest about his injury report, and Plaintiff was permanently terminated from employment with BNSF after a formal investigation hearing was held in November of 2013. (*Id.*, ¶¶ 32-34.)

Defendants filed the instant Motion, arguing that this action should be transferred to the U.S. District Court of Nebraska because all of the relevant events occurred in Nebraska, nearly all of the relevant witnesses reside in or are routinely working in Nebraska, and nearly all of the relevant documents and records are located in Nebraska. Plaintiff opposes the requested relief. (Doc. # 24.)

## II. <u>LEGAL STANDARD</u>

Under 28 U.S.C. § 1404(a), a district court may "transfer any civil action to any other district where it might have been brought" for the "convenience of the parties and witnesses, in the interest of justice." FELA cases are not exempt from the scope of § 1404(a), notwithstanding its broad venue provision. *See Ex parte Collett*, 337 U.S. 55, 60–61 (1949). "The idea behind § 1404(a) is that where a 'civil action' to vindicate a wrong—however brought in a court—presents issues . . . that make one District Court more convenient than another, the trial judge can, after findings, transfer the whole action to the more convenient court." *Cont'l Grain Co. v. The FBL–585*, 364 U.S. 19, 26 (1960). In the Tenth Circuit, the moving party must prove that (1) the action could have been brought in the alternate forum, (2) the current forum is inconvenient, and (3) the interests of justice are better served in the alternate forum. *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir.1991) (citing 28 U.S.C. § 1404(a) and *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981)).

In assessing whether parties are inconvenienced and whether the interests of justice would be best served by a transfer, the Court balances the criteria outlined in *Chrysler Credit*. These criteria include, but are not limited to:

> [1] the plaintiff's choice of forum; [2] the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; [3] the cost of making the necessary proof; [4] questions as to the enforceability of a judgment if one is obtained; [5] relative advantages and obstacles to a fair trial; [6] difficulties that may arise from congested dockets; [7] the possibility of the existence of questions arising in the area of conflict of laws; [8] the advantage of having a local court determine questions of local law; and, [9] all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Chrysler Credit*, 928 F.2d at 1516 (quoting *Texas Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967)).  The "party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient."  *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992) (quotation marks and citation omitted).  The decision to transfer venue, however, lies in the sole discretion of the district court and should be based on an "individualized, case-by-case consideration of convenience and fairness."  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

### III.  APPLICATION

**A.  This Case Might Have Been Brought in the District of Nebraska**

Plaintiff does not dispute that this case could have been brought in the District of Nebraska or that venue is proper in that District.  (*See* Doc. # 24.)  As the challenged actions here have a connection to the transferee District, the Court finds that this case might have been brought in the District of Nebraska.  Similarly, because BNSF has operations in Nebraska, Defendant Callahan is subject to personal jurisdiction in that state, and because a substantial part of the events at issue have occurred there, the

4

Court concludes that venue is proper in the District of Nebraska.  *See* 28 U.S.C. § 1391(b).

**B.     The "Competing Equities"**

**1.      Plaintiff's Choice of Forum**

Plaintiff argues that his choice of forum – here, the District of Colorado – should be given considerable weight.  Generally, "[u]nless the balance is strongly in the favor of the movant[,] the plaintiff's choice of forum should rarely be disturbed."  *Scheidt*, 956 F.2d at 965 (quoting *William A. Smith Contracting Co. v. Travelers Indem. Co.*, 467 F.2d 662, 664 (10th Cir. 1972)).  However, "little weight" is afforded to a plaintiff's choice "where the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum."  *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1168 (10th Cir. 2010) (citation omitted).  Additionally, a plaintiff's choice of forum receives less deference is the plaintiff does not reside in the district.  S*ee Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007) (when a plaintiff files a suit outside of his or her home forum, the presumption that his or her choice of forum is convenient applies with "less force"); *Bailey v. Union Pac. R.R.*, 364 F. Supp. 2d 1227, 1229–30 (D. Colo. 2005) (finding plaintiff's choice of forum entitled to little weight where "[i]t is neither his home nor the place of the accident" at issue); *Cuzzupoli v. Metro–North Commuter R.R.*, 2003 WL 21496879 at *2 (S.D.N.Y. June 30, 2003) ("Because plaintiff in this [FELA] case is a resident of Connecticut and the events underlying the litigation occurred in Connecticut, I find that little weight should be afforded to plaintiff's choice of this New York forum").

5

In the instant case, Defendant argues that Plaintiff's choice of forum is not entitled to deference because he is a resident of Nebraska and all of the facts giving rise to the lawsuit occurred in the District of Nebraska. Specifically, Plaintiff claims he (1) was injured in Alliance, Nebraska; (2) was intimidated by Callahan and completed an injury report in Alliance, Nebraska; (3) gave a statement to Claims Representative Dimmitt, in Alliance, Nebraska; (4) received medical treatment for his work-related injury in Scottsbluff, Nebraska; and (5) was investigated (and terminated) in Alliance, Nebraska. Plaintiff disputes none of these arguments. Nevertheless, Plaintiff argues that his choice of forum should receive deference because there are "substantial connections" between his claims and the district of Colorado; specifically, Plaintiff has received treatment and continues to receive treatment from "numerous medical providers" in Colorado, including providers in Fort Collins, Greeley, and Denver.[1] (Doc. ## 24 at 6; 24-1, ¶¶ 11-12.)

Defendants have the better argument. As provided above, Plaintiff does not live in Colorado and the facts "giving rise to the lawsuit" have very little, if any, "material relation or significant connection" to Colorado. *See Employers Mut. Cas. Co.*, 618 F.3d at 1168. Although Plaintiff has received and continues to receive treatment from Colorado medical providers after he was injured, this lawsuit will turn on Plaintiff's and Defendants' respective claims regarding the facts and circumstances of Plaintiff's

---

[1] Plaintiff also asserts that there is a "substantial connection" between his case and this forum because Defendant Callahan is a resident of Colorado and because there is a "closer geographical proximity between Alliance, Nebraska and the District of Colorado as compared to any court within the District of Nebraska." (Doc. # 24 at 6.) As discussed below, both of these arguments are pertinent to another factor, namely, the accessibility of witnesses and other sources of proof. However, they do not support the proposition that the facts giving rise to Plaintiff's claims were connected to the District of Colorado.

alleged injuries, the reporting of those injuries, the investigation, and his termination – all events that occurred in Nebraska. Indeed, Plaintiff's initial medical treatment providers, who arguably supply the most probative evidence regarding the extent of his injuries, are located in Nebraska, not Colorado. As such, the Court finds that Plaintiff's choice of forum carries little weight, and the facts giving rise to this lawsuit have a very tenuous connection to Colorado.

**2.      The Accessibility of Witnesses and Other Sources of Proof**

"The convenience of witnesses is the most important factor in deciding a motion [to transfer venue] under § 1404(a)." *Employers Mut. Cas. Co.*, 618 F.3d at 1169. To show inconvenience, the movant must identify the witnesses and their locations, (2) indicate the quality or materiality of their testimony, and (3) show that the witnesses were unwilling to come to trial, that deposition testimony would be unsatisfactory, or that the use of compulsory process would be necessary. *Id.* Defendants argue that this factor weighs in favor of transfer, as nearly all of the material witnesses reside in Nebraska, not Colorado, and also because the Court could not compel particular witnesses who reside in the District of Nebraska to participate in hearings, depositions, or trials if this action remains in the District of Colorado. The Court agrees.

With regard to the convenience of witnesses, Defendants note that the large majority of prospective material witnesses in this case reside in Nebraska. Although Defendant Callahan is a resident of Colorado, he submitted a Declaration to the Court indicating that he is usually present in Colorado only on weekends; that his job duties require him to travel nearly every week, Monday through Friday; and that he is often in

Nebraska at one of BNSF's multiple mechanical facilities.  (Doc. # 13-1, ¶ 7.)  As such, trying the case in Colorado would not be particularly convenient for Callahan, and trial in Nebraska would be "equally convenient."  (*Id.*)  Another central witness in this case – Dimmitt, BNSF's claims representative – primarily works in and resides in Nebraska.  (Doc. # 13 at 10.)  As a result, Defendants state that Dimmitt would "have to leave his job duties in Nebraska for at least 2 to 3 days at a time to travel to Colorado."  (*Id.*)  Likewise, all of the witnesses at Plaintiff's Formal Investigation hearing were residents of Nebraska, including Plaintiff's primary witness, employee Eldon Spanel, and the local union chairman representative, Julie Fitzsimmons.  (*Id.* at 4.)  These individuals would be subject to the same travel requirements.

More significantly, Defendants further assert that important third-party witnesses will be beyond the reach of the subpoena power of this Court, but within the subpoena power of the District of Nebraska.  (Doc. # 13 at 11-12); *see also* Fed. R. Civ. P. 45(c)(1) (providing that a subpoena may command a person to attend a trial, hearing or deposition either "within 100 miles of where the person resides, is employed, or regularly transacts business in person" or "within the state where the person resides, is employed, or regularly transacts business in person," if the person is a party or a party's officer or is commanded to attend a trial and would not incur substantial expense); *Employers Reinsurance Corp. v. MSK Ins., Ltd.*, No. CA.01–2608–CM, 2003 WL 21143105, at *7 (D. Kan. Mar. 31, 2003) (because a "court lacks power to compel the appearance of non-party witnesses who reside beyond the 100–mile limit of this court's subpoena power," the availability of compulsory process is a relevant factor in analyzing

whether to grant a motion to transfer under 28 U.S.C. § 1404(a)). Specifically, Plaintiff's initial treating physicians, Dr. Milton Johnson and Dr. Eric Gardener, work and live in Scottsbluff, Nebraska, approximately 170 miles from Denver. (*Id.* at 11.) Further, Joey Calamari, the supervisor to whom Plaintiff claims he initially reported his injury, is no longer an employee of BNSF, and his last known address is in Alliance, Nebraska, approximately 189 miles away from Denver. (*Id.* at 9, 11.)

As such, all three of these witnesses would be beyond the subpoena power of this Court, and the unavailability of compulsory process could very well prejudice Defendants. *See Bailey,* 364 F. Supp. 2d at 1231 (granting motion to transfer from the District of Colorado to the District of Nebraska in part because defendant's treating physicians in Nebraska were not subject to compulsory process and "[e]ven if some of these Nebraska physicians did not provide long-term treatment of plaintiff, their observations and diagnosis of him at discrete times may well prove probative of some of the issues in dispute"); *Millennium Cryogenic Technologies, Ltd. v. Weatherford Artificial Lift Sys., Inc.*, No. 11-CV-01971-WJM-CBS, 2012 WL 1015786, at *3 (D. Colo. Mar. 23, 2012) (noting that availability of compulsory process weighs in favor of transfer).

With regard to witness convenience, Plaintiff counters that he has received extensive medical treatment in Colorado and that these that these Colorado providers will be the "most important medical witnesses in this case" because they were ultimately able to diagnose him with his current health conditions, and, "given the geographical distances involved, it is reasonable to believe that thee medical witnesses will be **much more inclined** to travel to Denver for a trial as compared to Lincoln or Omaha,

Nebraska." (Doc. # 24 at 6) (emphasis added). Plaintiff lists three Colorado-based doctors in his Declaration in support of his Opposition to Defendant's Motion,[2] thus, even assuming that all three of them testify, there are still far fewer material witnesses who reside in Colorado than reside in Nebraska. (Doc. # 24-1, ¶ 11.) In any case, these are Plaintiff's own witnesses, and he should be able to obtain their appearance or testimony even if the Court transfers the case to the District of Nebraska. In contrast, unless the Court transfers the case to the District of Nebraska, given the 100-mile limit provided by Fed. R. Civ. P. 45(c)(1), Defendants will not be able to compel the testimony of Plaintiff's Nebraska medical providers, nor any witnesses who are no longer BNSF employees, such as Calamari, who reside or work more than 100 miles from the Denver Courthouse.

Plaintiff also notes that Defendant Callahan resides in Denver, as do BNSF General Foreman James Nelson and BNSF Superintendent Luz Esquivel, and contends all three individuals will "be required to give testimony in this case." (*Id.*) As discussed above, it is equally convenient for Defendant Callahan for trial to occur in Nebraska, and Plaintiff provides no information regarding Nelson or Esquivel's work locations, despite the fact that they apparently have extensive connections to the state of Nebraska given their BNSF employment.

Lastly, Plaintiff contends that "the courthouse in the District of Colorado is geographically closer than any of the courts in the District of Nebraska." (*Id.*) This last

---

[2] Plaintiff also lists Poudre Valley Hospital, Colorado Rehabilitation & Occupational Medicine, and Colorado Clinic (Doc. # 24-1, ¶ 11), but does not provide the names of any particular individual(s) who would testify from these entities.

10

point is important, but the sheer mileage at issue here cannot be dispositive. Given the realities of the rural state of Nebraska – and particularly because the District currently staffs offices in Lincoln and Omaha – any courthouse within the district would be farther away, in terms of sheer mileage, from Denver, as long as a particular witness happens to live towards the western part of the state. This factor alone cannot outweigh the factors that clearly weigh in favor of Defendants, including the fact that the events, omissions, and circumstances giving rise to this lawsuit occurred in Nebraska; most of the witnesses reside in Nebraska; and particular witnesses would not be available for subpoena unless the case is transferred to Nebraska.

### 3. Other Factors

Defendants also point to docket congestion as another factor weighing in favor of their transfer of this case. "When evaluating the administrative difficulties of court congestion, the most relevant statistics are the median time from filing to disposition, median time from filing to trial, pending cases per judge, and average weighted filings per judge." *Employers Mut. Cas. Co.*, 618 F.3d at 1169. Defendants note that in 2014, the civil actions per judgeship in the District of Colorado were 499, whereas the civil actions per judgeship in the District of Nebraska were 392. (Doc. # 13 at 13.) However, Defendants also concede that both districts have similar average median months for the disposition of civil cases, by trial or otherwise. (*Id.*) As such, the Court has only weighed this factor very slightly in favor of transfer.

However, the Court has considered whether there is an advantage of having the District of Nebraska decide this controversy, and given the clear connection between

11

that state and the facts of this lawsuit, it concludes that the residents of Nebraska have the greatest interest in its resolution. *See Bailey v. Union Pac. R.R. Co.*, 364 F. Supp. 2d 1227, 1233 (D. Colo. 2005) ("Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. . . . There is a local interest in having localized controversies decided at home") (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947)); *see also Cook v. Atchison, Topeka & Santa Fe Ry. Co.*, 816 F. Supp. 667, 669 (D. Kan. 1993) ("it would be more appropriate to have the case tried before a jury selected from residents of the state having the greatest interest in the case, namely, the state where the accident occurred.")

## IV. CONCLUSION

For the foregoing reasons, the Court finds that the interests of justice are served by transferring the case to the District of Nebraska. This action could have been brought in the District of Nebraska, and based on the discretionary factors set forth in *Chrysler Credit,* 928 F.2d at 1515, the Court finds and concludes that the balance of convenience weighs in favor of transfer. Accordingly, Defendants' Motion to Transfer (Doc. # 13) is GRANTED. It is

FURTHER ORDERED THAT this action be transferred to the District of Nebraska for further prosecution and adjudication.

DATED: June 24, 2015            BY THE COURT:

*Christine M Arguello*

_____
CHRISTINE M. ARGUELLO
United States District Judge